```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

BYRON T. MCCOLLUM,                *

      Petitioner,                 *

vs.                               *      CASE NO. 4:15-CR-041 (CDL)
                                         4:18-CV-197 (CDL)
UNITED STATES OF AMERICA,         *

      Respondent.                 *
_____
```

## O R D E R

Pending before the Court is Petitioner's motion to vacate his sentence under 28 U.S.C. § 2255 (ECF No. 106) and his amended motion to vacate (ECF No. 110).  In his motion and amended motion, Petitioner contends that his trial counsel was ineffective in several ways.  The United States Magistrate analyzed Petitioner's ineffective assistance claims and issued an Order and Recommendation which provided a detailed description of the procedural history and the trial evidence, then concluded that Petitioner failed to demonstrate that trial counsel was ineffective.  Petitioner filed voluminous objections to the Magistrate's Order and Recommendation.  After a de novo review of the record in this case, the Order and Recommendation filed by the United States Magistrate Judge on July 28, 2020 is hereby approved, adopted, and made the Order of the Court, including the denial of a certificate of appealability.  The Court considered Petitioner's

objections to the Order and Recommendation and finds that they lack merit.  The Court elaborates on its rationale in the following discussion.

## DISCUSSION

"To prevail on a claim for ineffective assistance of counsel, a movant must prove that counsel's performance was deficient and that, but for counsel's deficient performance, the result of the proceeding would have been different." *Hollis v. United States*, 958 F.3d 1120, 1122 (11th Cir. 2020) (per curiam) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).  "To establish deficient performance, a movant must prove 'that no competent counsel would have taken the action that . . . counsel did take.'"  *Id.* (quoting *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003)).

**I.  Advice to Waive Right to Testify**

Petitioner contends that trial counsel was ineffective when she advised Petitioner to waive his right to testify.  Counsel told Petitioner that the Government would introduce evidence of his prior bank robbery convictions to impeach him on cross-examination if he chose to testify.  Petitioner concedes that his 1997 conviction for grand theft motor vehicle would have been admissible under Federal Rule of Evidence 609(a)(1)(B), and he

asserts that he would have testified if only that conviction were admitted.  Petitioner argues that it is inconceivable that the Court would have permitted the Government to impeach him with his 1997 bank robbery conviction (for which he was released from prison in 2010) or his 1985 bank robbery conviction (for which he was released from prison in 1994 but remained on federal parole through at least 2015).

First, Petitioner argues that the Government did not give adequate notice that it intended to use the 1985 bank robbery conviction against him.  But, the Government's Rule 404(b) notice put Petitioner on notice that the Government intended to use the conviction, and it provided the jurisdiction (Middle District of Georgia), the case number (Case No. 85-245-COL), the charge (bank robbery), the guilty plea date (April 25, 1985), and the sentencing date (September 12, 1985).[1]  Rule 404(b) Notice 1, ECF No. 32. Thus, Petitioner had enough information about the 1985 conviction to contest its use as evidence, and he should not have been surprised if the Government sought to impeach him with this conviction, had he testified.

Second, Petitioner contends that the Court would not have determined that the probative value of the 1985 conviction

_____

[1] The Court excluded the 1985 bank robbery conviction under Rule 404(b) but did not decide whether the 1985 bank robbery conviction could be admitted under Rule 609.

3

substantially outweighed its prejudicial effect. The Court suggested the opposite at sentencing when Petitioner raised this issue. The Court told Petitioner:

> [T]here were plenty of good reasons for you not to testify because, although your attorney did an outstanding job prior to trial keeping out your previous criminal history -- which included several previous bank robberies -- she was able to exclude that from the trial – had you testified, it is clear that those felony convictions would have been admitted, and the jury would have heard at trial that you were a serial bank robber before you committed this offense. So at trial it made complete sense for you to make the decision on your own not to testify. And the record, I think, will be clear on that.

Sentencing Tr. 23:5-19, ECF No. 79. Moreover, even if it is possible that the Court would not have permitted the Government to impeach Petitioner with the 1985 bank robbery conviction, the Court likely would have admitted the 1997 convictions for bank robbery and grand theft motor vehicle under Rule 609(a)(1)(B). Rule 609(a)(1)(B) requires that a felony conviction be "admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Here, Petitioner argues that his testimony was critical to his defense because the Government's case against him was based on circumstantial evidence and Petitioner's testimony would have negated each of the circumstantial facts. Thus, Petitioner's credibility would have been vital, and the Government would have a substantial need for impeachment. The Court likely

would have admitted both the 1997 convictions, and Petitioner's counsel was not ineffective for telling her client so.

## II.  Failure to Object to DNA Expert's Testimony

Petitioner argues that trial counsel was ineffective because she failed to object to the testimony of the Government's DNA expert, Brandon McCollum.  Brandon McCollum, a forensic examiner in the FBI's DNA Casework Unit, opined that there was "moderately strong support" that Petitioner was a contributor of the DNA on "item 2" from a Camaro that was used in the bank robbery that was at issue in the trial; it was 170 times more likely that this DNA came from Petitioner as opposed to a random person.  Trial Tr. vol. ii 244:22-245:4, ECF No. 75.  Petitioner does not challenge Brandon McCollum's qualifications, but he does assert that if counsel had filed a motion to exclude the testimony under Federal Rule of Evidence 702, the testimony would have been excluded. Petitioner also argues that the DNA expert's testimony was unreliable and thus had very little probative value, so it would have been excluded under Federal Rule of Evidence 403.

First, Petitioner believes that because the DNA expert could not determine the sex of the person whose DNA was on item 2, there is no way the DNA expert could offer any reliable opinion about the DNA evidence.  Second, Petitioner contends that the Court would have excluded the testimony for the same reasons it excluded DNA evidence in *United States v. Natson*, 469 F. Supp. 2d 1253 (M.D.

Ga. 2007).  This argument compares apples to oranges.  In *Natson*, the issue was paternity of a fetus.  The DNA expert in *Natson* testified that there was a 96.3% chance that the defendant was the father of the fetus, but he also said that the statistical probability of paternity must be 99.99% for the DNA scientific community to consider a DNA test to show a paternity match.  Thus, the DNA evidence did not establish that the defendant was the father of the fetus under prevailing scientific standards, and the evidence was excluded.  Here, the issue was the likelihood that DNA found on the Camaro came from Petitioner as opposed to a random person, and what that means.

If counsel had filed a motion to challenge the DNA expert's opinion that a likelihood ratio of 170 provides moderately strong support that Petitioner contributed the DNA on item 2, a hearing on that motion would have revealed something that the DNA expert stated in his report: based on the "standards published by the Association of Forensic Science Providers," a likelihood ratio between 100 and 990 provides "moderately strong support" for inclusion.  FBI Laboratory Report 4, ECF No. 106-2 at 54.  Since there is evidence that the relevant scientific community considers a likelihood ratio of 170 to be "moderately strong support" for inclusion, the evidence would not have been excluded under Rule 702 or Rule 403.  Accordingly, counsel was not ineffective for failing to file a motion to exclude the DNA expert's testimony.

### III. Cross-Examination of Brandon McCollum

Petitioner contends that counsel did not adequately prepare for trial with regard to DNA evidence and that as a result her cross-examination of Brandon McCollum, the Government's DNA expert, was deficient.  Petitioner also contends that counsel admitted that Petitioner's DNA was on the Camaro.  For the reasons set forth in the Magistrate's Order and Recommendation, the Court finds that counsel did not admit that Petitioner's DNA appeared on the Camaro.  The Court further agrees with the Magistrate that while counsel did not ask all the questions that Petitioner thinks she should have, counsel's questioning of Brandon McCollum constituted sound trial strategy and was not unreasonable under prevailing professional norms.  Thus, counsel was not ineffective based on her cross-examination of Brandon McCollum.

### IV.  Cross-Examination of William Mitchell

Petitioner contends that counsel did not properly cross-examine William Mitchell because she failed to impeach him with a prior inconsistent statement.  At trial, Mitchell testified that Michael Hall and Petitioner came to his house in late May of 2015 and that a hockey mask was hanging from the rearview mirror of Hall's blue van.  Mitchell's prior statement was that he saw the hockey mask in the blue van on June 3 and 4, 2015, which Petitioner contends is impossible because the van was in a repair shop beginning June 1, 2015.  Petitioner's counsel did not impeach

Mitchell with his prior inconsistent statement about the date he allegedly saw Petitioner with Hall in the blue van, but she did impeach Mitchell's identification of Petitioner by eliciting testimony that Mitchell's prior description of the person who accompanied Hall in late May of 2015 did not match Petitioner's appearance, that Mitchell has blurry vision, and that Mitchell never spoke with Petitioner. The Court agrees with the Magistrate that counsel's questioning of William Mitchell constituted sound trial strategy and was not unreasonable under prevailing professional norms. The Court also agrees with the Magistrate that Petitioner failed to show prejudice resulting from counsel's failure to impeach Mitchell with his prior inconsistent statement. Accordingly, counsel was not ineffective when she failed to impeach Mitchell with the prior inconsistent statement.

## V.   "Newly Discovered Evidence" About William Mitchell

Petitioner claims that during a lunch break in his trial, he was held in the U.S. Marshal lockup and that Michael Hall was in the next holding cell. Petitioner asserts that Hall, who did not testify at trial, told him that William Mitchell helped plan the Regions Bank robbery, that Mitchell was able to buy a handgun for Hall, and that when Hall picked up the firearm from Mitchell, Joseph White was with him. Petitioner suggests that this evidence shows that Mitchell lied about Petitioner's participation in the robbery to avoid prosecution himself. Petitioner did not share

this information with his lawyer until after the trial.  He also did not raise this issue on direct appeal.

The Magistrate construed this claim as an ineffective assistance of counsel claim and recommended rejecting it because it is unclear what counsel should have done differently given Petitioner's failure to give her the information.  The Court agrees that Petitioner failed to show that counsel's performance was deficient, so to the extent Petitioner is attempting to assert an ineffective assistance of counsel claim based on counsel's failure to discover or question anyone about this new evidence, it fails.

Petitioner contends that he is not advancing an ineffective assistance claim.  Rather, he asserts that this is a "new evidence" claim.  The Court is not convinced that this claim is cognizable under § 2255.  The habeas statute "states four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'"  *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255(a)).  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying . . . criminal proceeding."

*Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981)).  Here, Petitioner did not suggest that the "new evidence" issue establishes a jurisdictional or constitutional claim.  And although Petitioner knew about the evidence at trial and thus could have the raised the issue at that time or on direct appeal, he did not do so.  For these reasons, the Court denies Petitioner's § 2255 petition on this ground.

## VI. Cross-Examination of Deputy Baldwin and Probation Officer Minnelli, and the Failure to Call a U.S. Marshal

Petitioner argues that counsel should have elicited additional testimony from two law enforcement witnesses on cross-examination and that she should have called a U.S. Marshal from Florida to rebut the Government's suggestion that he fled to Florida to avoid arrest for the Columbus, Georgia bank robbery.

First, Petitioner asserts that counsel did not adequately cross-examine a police officer named Robert Baldwin, who detained Petitioner on suspicion of driving under the influence.  On direct examination, Baldwin testified that Petitioner gave him a fake

name.    On cross-examination, Petitioner's counsel elicited testimony that Petitioner did give Baldwin his real name (after initially lying) and that Baldwin did not charge Petitioner with a crime.   Petitioner claims that counsel's cross-examination was deficient because she did not elicit testimony that Petitioner ultimately gave Baldwin his correct phone number and motel address. The Magistrate concluded that Petitioner failed to demonstrate that counsel's cross-examination of Baldwin was deficient.   The Court agrees.   Even if Baldwin would have testified that Petitioner provided him with a phone number and address, and if other evidence would have demonstrated that the phone number and address were correct, counsel did elicit testimony that Petitioner told the truth about his identity after initially lying.   She just did not pursue this path further, and the Court cannot conclude that this decision was unreasonable under prevailing professional norms. Even if counsel's performance was deficient.   And, the Court agrees with the Magistrate that Petitioner did not demonstrate that it was prejudicial for counsel to fail to follow up and seek evidence to support Petitioner's argument that he did not flee or attempt to evade arrest.   Thus, counsel was not ineffective when she cross-examined Baldwin.

Second, Petitioner asserts that counsel did not adequately cross-examine his probation officer, John Minnelli.[2]  Petitioner argues that when he checked in with Minnelli on June 23, 2015, he told Minnelli that he was in Florida, gave Minnelli his contact information, and told Minnelli that he planned to get a duplicate Florida driver's license the next day before returning to West Palm Beach, Florida.  Counsel asked Minnelli if he spoke with Petitioner in the "summer of last year" and Minnelli said that he did.  Trial Tr. vol. iii 216:19-22, ECF No. 76.  Counsel asked if he mentioned that he was on his way to renew his Florida driver's license and Minnelli responded that he could not recall this detail.  *Id.*  Petitioner suspects that Minnelli may have taken detailed notes regarding the telephone call, and Petitioner believes those notes may have included Petitioner's explanation that he was in Florida to obtain a duplicate driver's license.  Petitioner asserts that Minnelli should have been required to produce any notes he might have made regarding the June 23, 2015 phone call.  The Magistrate correctly concluded that all of this is speculative, and that counsel pursued the line of questioning regarding the duplicate driver's license but Minnelli did not

---

[2] To prevent the jury from learning that Minnelli was Petitioner's probation officer, Minnelli was presented as someone who knew Petitioner from Florida.

remember.   The Court finds that Petitioner failed to show that counsel was deficient in her cross-examination of Minnelli.

Third, Petitioner argues that counsel should have found and called a U.S. Marshal to testify about Petitioner's arrest. Petitioner contends that the U.S. Marshal would have been able to testify that Petitioner was arrested at the motel and room number that Petitioner had provided to Minnelli and Baldwin and that he had a duplicate Florida driver's license that was issued on June 24, 2015.   This evidence, Petitioner asserts, would have shown that Petitioner was not trying to flee or avoid arrest.   But Petitioner did not establish that he was prejudiced by counsel's failure to exhaust all avenues with regard to Petitioner's argument that he was not in flight when he went to Florida.   Even if Petitioner was not in flight when he was in Florida, the jury had evidence that Petitioner helped Hall procure vehicles that were used in the robbery, that Petitioner purchased products to remove dye from the stolen money, and that Petitioner arrived at the Enterprise car rental location where Hall was arrested with stolen money but left the scene when he learned that Hall had been taken to the back.   Moreover, counsel may have had other legitimate reasons to avoid calling as a witness a U.S. Marshal who arrested Petitioner on a parole violation warrant.   For these reasons, the Court finds that Petitioner did not establish that counsel was

ineffective when she failed to call one of Petitioner's arresting officers as a witness.

## VII. Other Grounds for Habeas Relief

Petitioner's motion to vacate contained three other grounds for habeas relief based on ineffective assistance of counsel, and the Magistrate concluded that Petitioner had not shown deficient performance or prejudice.  Order & Recommendation 36-43, ECF No. 156.  Petitioner did not object to the Magistrate's recommendations on these three grounds; he contends that the Magistrate did not give him enough time to file his objections because the Magistrate did not grant Petitioner's request for a 60-day extension.  In ruling on the extension request, the Magistrate noted that Petitioner had filed a petition for a writ of mandamus with the Eleventh Circuit Court of Appeals, asking the Court of Appeals to direct the Court to rule on his motion to vacate and amended motion to vacate.  The Court of Appeals held the Petitioner's mandamus petition in abeyance and gave the Court sixty days, until September 11, 2020, to rule on Petitioner's motion to vacate and amended motion to vacate.  11th Cir. Order (July 13, 2020), ECF No. 155. Accordingly, to ensure that Petitioner had adequate time to file his objections while preserving enough time for the undersigned to receive and consider Petitioner's objections and comply with the Eleventh Circuit's deadline, the Magistrate gave Petitioner seven extra days from the date of the extension order to file his

14

objections, which had the effect of extending the objection deadline to August 25, 2020—fourteen days after the original August 11, 2020 objection deadline. *See generally* Order granting in part and denying in part Mot. for Extension of Time, ECF No. 159.

The Court reviewed Petitioner's motion to vacate with regard to grounds VII, VIII, and IX, along with the Magistrate's Order and Recommendation on those grounds. For Ground VII, Petitioner contends that counsel ineffectively handled evidence concerning a Cadillac that was found abandoned in Macon in August 2015. Petitioner contends that his Cadillac was stolen on June 6, 2015. He further argues it should have been clear to counsel that the Cadillac found in Macon was not his, though Petitioner concedes that the abandoned Cadillac had his vehicle's VIN plates. He asserts that counsel should have conducted a more detailed investigation and pointed out that the abandoned Cadillac was described as gold while his Cadillac was silver/gray. And Petitioner contends that counsel should have cross-examined a deputy more thoroughly about his discovery of the abandoned Cadillac. For the reasons set forth in the Order and Recommendation, Petitioner failed to establish that counsel was deficient in her investigation of the abandoned Cadillac or her cross-examination of Deputy Pecorilli, and he failed to demonstrate prejudice resulting from any deficiency.

For Ground VIII, Petitioner asserts that counsel did not conduct an adequate investigation to rebut the trial testimony of Brandon Turner, Petitioner's former cellmate who testified that Petitioner confessed that he participated in the Regions Bank robbery.  Counsel informed Petitioner before trial that Turner was expected to testify and subpoenaed one of the witnesses Petitioner suggested to rebut Turner's testimony.  That witness, Clarence Martin, testified at trial that Turner told him that Turner planned to lie at Petitioner's trial in order to receive a reduced sentence and that Turner planned to falsely testify that Petitioner had admitted to robbing the Regions Bank.  Martin further testified that Petitioner maintained his innocence regarding the Regions Bank robbery.  Petitioner argues, though, that counsel should have located more witnesses from his jail pod who might have testified that they learned about details of the robbery from the television news and from another inmate named Dyrell Davis, who was privy to some of the details because he was in the courtroom with Michael Hall when his case was discussed by a federal prosecutor. Petitioner further asserts that counsel should have cross-examined Turner on whether he had access to Petitioner's paperwork while Petitioner was not in their communal cell and on Petitioner's theory that another inmate named Nimesh Desai paid Turner to collect information about Petitioner's case and then testify against Petitioner in exchange for a reduced sentence.  For the

reasons set forth in the Order and Recommendation, Petitioner failed to establish that counsel was deficient in her investigation of Petitioner's claim that Turner fabricated evidence, in her examination of Martin, or in her cross-examination of Turner.

For Ground IX, Petitioner argues that counsel provided ineffective assistance when she failed in closing arguments to correct the prosecutor's misstatements of the evidence regarding what happened at the Enterprise car rental store, when she did not clarify evidence related to the abandoned gold Cadillac, and when she appeared to admit to the jury that Petitioner's DNA was found on the stolen red Camaro. The Magistrate correctly concluded that counsel did not admit that Petitioner's DNA was on the Camaro. And, for the reasons set forth in the Order and Recommendation, Petitioner failed to establish that counsel was otherwise deficient in her closing argument.

CONCLUSION

For the reasons set forth above, the Order and Recommendation filed by the United States Magistrate Judge on July 28, 2020 is hereby approved, adopted, and made the Order of the Court, including the denial of a certificate of appealability.

IT IS SO ORDERED, this 8th day of September, 2020.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA